Harper, Ch.
I have no doubt but that the rule^of the English Courts, is as suggested in the case of Wardlaw v. Gray, decided at the last sitting of this Court; that “if the wife’s fortune be within the reach of the Court, equity will not suffer it to be removed out of its jurisdiction until an adequate provision be made for her; unless she has already been sufficiently provided for, or that on her personal examination she waives the benefit of this protection.” And I believe that unless the wife appears to waive her right on examination, the Court will never direct the money to be paid^ *56 oyer to the husbaud. But it has been expressly decided by our Courts, and such has been the uniform practice since our Courts of Equity have existed, that the Court will not, of its own motion, direct a settlement on the wife, but order the money to be paid over to the husband; unless some suggestion be interposed on behalf of the wife, her trustee, or some other friend, of the propriety of such a provision. In the case of Pitts v. Wicker, and Hood v. Archer, referred to yi Gray v. Wardlaw, it was held, that where the wife’s land had been sold for partition by the officer of the Court, and the money remained in his hands at the time of her death, the money did not belong to the husband; but survived to the administrator of the wife. In the latter case, it was held that the husband has not the right as of course, and without the order of the Court to receive money of the wife, in the hands of the Commissioner, nor the Commissioner of course a right to pay. And where the wife had died before such order obtained, and when no application could be made for a settlement on her, the money was held not to belong to the husband, but to go to her legal representative. Though the Court will not volunteer on the wife’s behalf, to secure a provision for her, yet it ought to afford every facility to the making of an application for that purpose by herself or friends. This would not be done if the husband might receive the money from the Commissioner, without her privity, and perhaps without her knowing that there was such money in his hands. The publicity of the application in Court, for the order to pay over the money, affords some chance of giving notice to the wife’s friends and enabling an application to be made on her behalf. And though the order suggested in the first of the eases stated, that the wife should join in the receipt, can have no effect in preventing the property vesting in the husband, it will be some evidence of her consent to his receiving the money. It will serve at least to assure the Court, that she has notice of the money’s being claimed by the husband. She may refuse to join in the receipt and still apply to the Court for a provision. The order moved in the first of the cases stated, is granted in both cases.
Chancellor Johnston, dissented.